UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| TRACIE L BENTHIN,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | 1:20-CV-01014-CBK<br><br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court on plaintiff Tracie L. Benthin's motion for summary judgment, Doc. 15, appealing the order of the Commissioner of Social Security.

## BACKGROUND

This case is an appeal from the Commissioner's denial of plaintiff's application for Social Security Disability Income benefits, filed on 7/20/17, alleging disability since 9/26/16. Plaintiff alleges disability due to fibromyalgia; osteoarthritis of the lumbar spine, right hip, and hands; right hip dysplasia; osteopenia; hypoglycemia; anxiety; and depression. Doc. 16 at 1-2. Plaintiff's claims were initially denied on January 31, 2018, and then again, upon reconsideration, on February 14, 2018. A video hearing before an administrative law judge ("ALJ") was held on June 10, 2019. The ALJ then issued a written opinion, finding that plaintiff was not disabled and denying her disability benefits claims. Admin. Rec. at 24. The Appeals Council denied review on September 23, 2019, making the ALJ's decision final. Admin. Rec. at 1. Plaintiff then commenced this action on July 21, 2020.

The ALJ used the familiar five-step sequential evaluation to determine disability:

In step one, the ALJ decides whether the claimant is currently
engaging in substantial gainful activity; if the claimant is working,
he is not eligible for disability insurance benefits. In step two, the
ALJ determines whether the claimant is suffering from a severe
impairment. If the claimant is not suffering a severe impairment, he
is not eligible for disability insurance benefits. At the third step, the
ALJ evaluates whether the claimant's impairment meets or equals
one of the impairments listed in Appendix 1 of the regulations (the
"listings"). If the claimant's impairment meets or equals one of the
listed impairments, he is entitled to benefits; if not, the ALJ proceeds
to step four. At step four, the ALJ determines whether the claimant
retains the "residual functional capacity" (RFC) to perform his or her
past relevant work. If the claimant remains able to perform that past
relevant work, he is not entitled to disability insurance benefits. If
he is not capable of performing past relevant work, the ALJ proceeds
to step five and considers whether there exist work opportunities in
the national economy that the claimant can perform given his or her
medical impairments, age, education, past work experience, and
RFC. If the Commissioner demonstrates that such work exists, the
claimant is not entitled to disability insurance benefits.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (internal C.F.R. citations omitted).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful

activity since September 26, 2016, the alleged onset date of her disability. Admin. Rec.

at 13. While plaintiff worked after said date, that work did not rise to the level of

substantial gainful activity. Id.

At step two, the ALJ found that plaintiff's "fibromyalgia; peripheral

polyneuropathy; degenerative joint disease, hips, mild on the right and minimal on the

left; schizophrenia, unspecified type; anxiety; and depression" were all severe

impairments under 20 C.F.R. 404.1520(c). Id. at 14. The ALJ determined that plaintiff's

severe impairments "significantly limit [her] ability to perform basic work activities.

Id. The ALJ also found that plaintiff had osteopenia, hypoglycemia, and adhesive

capsulitis, but that those conditions did not rise to the level of severe impairments. Id.

At step three, the ALJ determined that plaintiff did not have "an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),

2

404.1525 and 404.1526)." Id. The ALJ proceeded to go through the listed impairments most analogous to plaintiff's and explain why her impairments did not medically equal a listed impairment.

The ALJ went on to find that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(h). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit (with normal breaks) for more than a total of 6 hours in an 8-hour workday. She can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders/scaffolds, work at unprotected heights, or work with dangerous moving mechanical parts. Mentally, the claimant retains the ability to understand, remember, and carry out short, simple instructions, respond appropriately to changes in a routine work setting, make judgments on simple work-related decisions, and interact with supervisors and co-workers on an occasional basis. She should have only brief and superficial interaction with the public with no customer service interaction. The claimant is also able to work at a consistent pace throughout the workday but not on a production rate pace work where each task must be completed within a strict timeline.

Admin. Rec. at 17.

The ALJ agreed that plaintiff's medically determinable impairments could cause her alleged symptoms, but found the alleged severity of said symptoms to be unsupported by sufficient evidence in the record. Id. at 18.

The ALJ found that plaintiff's physical symptoms—from the period immediately preceding the alleged disability onset date up until the time of the hearing before the ALJ—were relatively mild and consistent with a capacity to perform light work. Shortly before the alleged onset date of plaintiff's disability she complained of bilateral foot pain and was instructed to acquire over-the-counter orthotic inserts. Id. The ALJ noted that physical exam findings in 2016 showed plaintiff's extremities to be normal, she had "full muscle strength in all planes," and "mid-foot tenderness, but no specific point of exquisite pain and no swelling or evidence of a stress fracture" with no instability. Id.

The ALJ then found that "[m]edical records do not reflect there was a significant change in the claimant's symptoms in 2017. In February 2017, her symptoms included lower back and hip pain, but it was noted that she had been doing well and she denied having any significant changes in her overall health." Id. The ALJ also found that plaintiff's general level of medical treatment did not change significantly in 2017. Id. The ALJ noted medical records from a December 2017 exam:

> Musculoskeletal findings were minimal. There were no effusions. There were multiple tender points across the chest and back, but she was non-tender along the lateral epicondyle of the elbows. She did report some tenderness along the medial aspect of the knees bilaterally. She could bend to touch her toes. She had a good grip bilaterally, although weaker on the left. Deep tender reflexes of the knees were hyper-responsive and exaggerated. She could raise her legs while lying down to about 30 degrees bilaterally before stopping due to pain. She had a shuffling gait, which she attributed to hip pain. She could get up and out of a chair without any difficulty. Very notably, the examiner remarked the claimant demonstrated a much more subjective degree of pain than could be elicited objectively. The claimant could flex and extend her fingers without any difficulty. They were stiffer with movement, but no gross deformities were noted. There was no muscle atrophy noted of the upper or lower extremities or hands. There were no other gross changes noted on the exam. Neurologic signs were normal. She was alert and oriented. Cognitive exam findings were normal. She was cooperative. There was no tremor. Cranial nerves were grossly intact. Podiatric exam findings were normal. Psychological signs were also normal. The reported included imaging of the claimant's hips, which should [sic] only mild right and minimal left hip degenerative joint disease.

Admin. Rec. at 19. Additionally, the ALJ found that throughout 2018 and 2019 plaintiff's physical exam results remained largely consistent with the capacity to perform light work. Id. In January 2019, plaintiff reported burning feet, but denied numbness. Id. Other than a toe injury, which was treated mildly, her physical exam findings from those years were found to be normal. Id.

As for plaintiff's mental impairments, the ALJ noted that from the period shortly before plaintiff's alleged disability onset date in 2016 until 2019 plaintiff struggled with anxiety and depression. Id. at 20. The ALJ found that plaintiff's

symptoms "varied in 2017 due to situational stressors." Id. She was treated with Xanax (which was noted to be helpful) and Prozac. Id. "In early 2018, the claimant reported she did not have many problems. She was learning to handle things better and did not become as anxious as she had in the past. In September, she was doing fairly well. She refilled Xanax, but noted she rarely needed it." Admin. Rec. at 20. The ALJ also specifically noted a January 2018 psychological exam in which she appeared largely normal and was administered the Wechsler Memory Scale-IV exam, resulting in average to high-average scores. Id.

The ALJ found that plaintiff's mental impairments worsened in 2019, when she was "hospitalized after hearing voices," but improved with medication. Id.

> At follow-up appointments in May, she reported avoiding people, but the voice she reported were quiet with medication. Objective evidence was consistent with a residual functional capacity to perform unskilled work. She was fully oriented. Her mood, speech, dress, and motor activity were normal. She was depressed, but thought process was normal. Attention and focus were adequate. Her insight and judgment were fair.

Admin. Rec. at 21.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Admin. Rec. at 22.

At step five, the ALJ determined that there was work which exists in significant numbers in the national economy which plaintiff could perform. In making this determination the ALJ referred to the Dictionary of Occupational Titles ("DOT") and the testimony of a vocational expert ("VE"). The ALJ referred to the VE's testimony at the hearing, where the ALJ asked the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of three jobs. Admin. Rec. at 23. Based on that VE testimony, the ALJ determined that plaintiff could work as a cleaner housekeeper (DOT Code 323.687-014), laundry

folder (DOT Code 369.687-018), and merchandise marker (DOT Code 209.587-034). The ALJ then stated the number of each of these jobs that exists in the national economy according to the DOT. Based on the VE's testimony and the DOT job numbers the ALJ found that plaintiff was not disabled and denied her disability benefits claim.

## LEGAL STANDARD

An individual is considered to be disabled if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord*, Bernard v. Colvin, 744 F.3d 482, 486 (8th Cir. 2014). An individual shall be determined to be disabled "only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the Commissioner's conclusions." Draper v. Colvin, 779 F.3d 556, (8th Cir. 2015) (internal quotations omitted) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a

conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

## DISCUSSION

### I.

Plaintiff argues that the ALJ failed to properly account for her fibromyalgia and alleged manipulative limitations in his RFC determination. A social security disability claimant's RFC assessment is an indication of what the claimant can do on a "regular and continuing basis" despite their impairments. 20 C.F.R. § 404.1545(b). When determining a claimant's RFC, the ALJ must consider all the claimant's severe and non-severe mental and physical impairments alone and in combination with one another. Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of the claimant's ability to function in the workplace." Lawrence v. Saul, 970 F.3d 989, 995 (8th Cir. 2020) (internal citation and replacement omitted). The final RFC determination is a combination of medical evidence, subjective complaints, as well as other evidence "that may help shed light on the intensity, persistence, and limiting effects of symptoms." Id.

Plaintiff argues that the ALJ essentially relied on objective medical evidence in determining the severity of her fibromyalgia symptoms and their associated limiting effects. Fibromyalgia, plaintiff points out, is a disease with symptoms not easily quantified or detected with traditional, physical medical tests and examinations. See Forehand v. Barnhart, 364 F.3d 984, 987 (8th Cir. 2004) ("[Fibromyalgia] is chronic, and [d]iagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests.") (internal quotations omitted).

While the Eighth Circuit recognizes the nature of fibromyalgia and its inherent difficulty to diagnose, it is still an impairment subject to the same evidentiary analysis as

any other impairment that might make one eligible for social security disability. The ALJ will still look for a history of complaints in a claimant's physicians' notes and treatment records, as well as the intensity of treatment. Indeed, in Forehand the Eighth Circuit made plain its reliance on "the medical reports and record in [that] case." Forehand, 364 F.3d at 987; Id. at 988 ("The medical reports of many treating physicians amply support her allegations of pain and limitation."). The Court also noted that Forehand's own testimony as to her limitations was consistent with the medical records and reports in the evidentiary record. Id.

In the instant case, the ALJ did find plaintiff's fibromyalgia to be a serious limitation at step two of the sequential analysis, but did not believe it to be so limiting that she could not still perform less than the full range of light work. The ALJ found that plaintiff's impairments could cause the symptoms she alleged, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Admin. Rec. at 18. In short, the ALJ determined that plaintiff's medical records, treatment history, and other evidence including her activities of daily living and some medical opinion evidence did not support a finding that plaintiff was as impaired as she claimed.

The ALJ's RFC determination is supported by substantial evidence in the record. The ALJ cited extensively to plaintiff's medical records. Shortly before the alleged disability onset date, plaintiff complained of bilateral foot pain, she was treated conservatively with over-the-counter shoe inserts and Tylenol Arthritis. There were no noted serious complaints of pain or treatment in 2016. While plaintiff reported lower-back and hip pain in 2017, her course of treatment did not significantly change. She took gabapentin, which reportedly provided relief. The ALJ noted that plaintiff was also taking gabapentin in 2018 and 2019, and that it was helping with her pain.

As plaintiff states in her argument, the ALJ did extensively cite objective medical evidence from physical examinations, which often misses fibromyalgia. That said, the burden is not on the ALJ to prove that plaintiff does not have fibromyalgia; rather

plaintiff must present sufficient evidence to support her own claims of impairment.[1] The ALJ notes that at the time of the hearing, plaintiff watches her grandchildren, ages 7, 9, and 11 for a "few days" several times during the summer. Admin. Rec. at 21. The ALJ stated that plaintiff remains social with family and friends, plays cards with her spouse, dresses herself and cares for her personal hygiene, cooks, wash clothes, vacuum, shop for groceries, and garden with her spouse (though her spouse does most of the activity). This sort of information is useful in determining what a claimant can do despite limitations. Performing activities of daily living "such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity," Barnhart, 366 F3d at 677, but it is certainly evidence relevant to an RFC determination. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

The ALJ did not give particularly heavy weight to any of the medical opinions in this case, though he thought the state agency consultants were persuasive in their physical assessment. The ALJ properly placed some weight on the state agency physician's opinion but discussed a great-deal more evidence throughout the RFC determination. See Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004) ("It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment."). The ALJ also found that Dr. Dan Reiffenberger's opinion (that plaintiff was limited by a need to change positions frequently and would have difficulty with repetitive handling of objects) was not supported by sufficient evidence to be persuasive. Plaintiff claims that the ALJ should have discussed the limitation concerning handling objects that Dr. Reiffenberger found and explain why she should not be limited to less than frequent handling. But the ALJ cited to multiple physical exams throughout the RFC determination "including physical

---

[1]    Plaintiff also points out that the ALJ does not mention the word fibromyalgia in his RFC assessment, which is true but somewhat misleading. The ALJ references plaintiff's alleged "pain" throughout the RFC assessment portion of the opinion—pain being the primary symptom of fibromyalgia.

examinations during the same time period which showed normal muscle strength, range of motion, and no pain or weakness in extremities." Fentress v. Berryhill, 854 F.3d 1016, 1020 (8th Cir. 2017), as corrected (Apr. 25, 2017). The records cited throughout the RFC determination belie the notion that plaintiff has significant manipulative limitations, and the ALJ's decision not to rely fully on the opinion of Dr. Reiffenberger on this issue is well supported by the evidence in the entire record. Her December 2017 physical exam specifically noted that she had good grip bilaterally. Admin. Rec. at 19. Beyond the opinion of Dr. Reiffenberger and plaintiff's subjective complaints, nothing in the record would support such a limitation.

As to mental-health medical opinion evidence, the ALJ stated:

> The record also includes opinions from treating sources that were less persuasive. In a June 2019 opinion, Jamie Block checked options indicating the claimant's ability to understand, remember, and carry out instructions were affected, but only mildly. She indicated marked limitation in public interaction, but she indicated that she unable to assess more areas. In a June 2019 opinion, Carrie Dylla, PAC, checked options indicating moderate limitations in understanding, remembering, and carrying out simple instructions, but marked limitations with complex instructions. She indicated marked to extreme limitations in getting along with others. The opinions are very recent and after the recent decline in the claimant's symptoms from her mental impairments. They are inconsistent with the minimal symptoms and objective findings from much of the relevant period.

Admin. Rec. at 22. These records are consistent with fibromyalgia symptoms, but the ALJ explained in earlier portions of his opinion that plaintiff's psychological symptoms and course of treatment were both relatively mild.

The ALJ found that plaintiff's symptoms "varied in 2017 due to situational stressors." Id. at 20. She was treated with Xanax (which was noted to be helpful) and Prozac. Id. "In early 2018, the claimant reported she did not have many problems. She was learning to handle things better and did not become as anxious as she had in the past. In September, she was doing fairly well. She refilled Xanax, but noted she rarely needed it." Id. While her mental condition is noted to have seriously deteriorated in 2019, that was well after the alleged disability onset date.

While fibromyalgia is not diagnosable with normal physical exams, the ALJ properly included such exam results along with other evidence in the record. The ALJ did not discredit plaintiff's complaints based on a lack of objective evidence alone, rather the ALJ determined that based on all of the evidence in the record, pain at the level plaintiff claims was not supported by substantial evidence. In making his decision, the ALJ relied primarily on a lack of subjective complaints by plaintiff to her medical care providers, and the conservative nature of the treatment prescribed over the course of several years. The ALJ also relied on the fact that plaintiff seemed to be well-controlled with medication for much of the period at issue. Some weight was then placed on the opinion of the state agency consultant, as well as the plaintiff's own subjective complaints. The ALJ incorporated plaintiff's complaints in the RFC, he limited her to less than the full-range of light work based largely on those complaints.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Lawrence v. Saul, 970 F.3d 989, 995 (8th Cir. 2020) (citation omitted). While it is unsurprising that plaintiff can point to some evidence that contradicts the ALJ's decision, the RFC determination as a whole is supported by substantial evidence on the record. Indeed, if the record contained substantial evidence that could support a more severe limitation based on plaintiff's fibromyalgia but also substantial evidence on the record supporting the ALJ's RFC determination, then the ALJ's determination must prevail. "[The Court] may not reverse [the ALJ's] decision simply because [it] would have reached a different conclusion than [the ALJ] or because substantial evidence supports a contrary conclusion." Fentress, 854 F.3d at 1021.

## II.

Plaintiff's last argument is that the Commissioner failed to carry his burden at step five to identify jobs in the national economy that plaintiff could perform. "[W]ork which exists in the national economy' is defined to mean 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Barnhart v. Thomas, 540 U.S. 20, 23–24 (2003). Plaintiff argues that the ALJ

was required to also find that the jobs that she was said to be qualified for and physically able to perform exist in significant numbers either in the region of the country in which she lived or, in the alternative, state in which regions of the Country such jobs exist in significant numbers. In short, plaintiff argues that VE testimony solely concerning national job numbers based solely on the DOT is insufficient to carry the Commissioner's burden at step five of the sequential analysis.

Defendant asserts that the Eighth Circuit's opinion in Weiler v. Apfel stands for the proposition that national job numbers are all that are required to carry the Commissioner's burden at step five. In Weiler, the SSA claimant argued on appeal that "the ALJ erroneously concluded that there are a significant number of jobs in the economy that Weiler could perform" considering his RFC. Weiler v. Apfel, 179 F.3d 1107, 1110 (8th Cir. 1999). As indicated, Weiler's argument concerned the ALJ's determination that the jobs the ALJ identified were actually compatible with his RFC. Weiler never argued, and the Eighth Circuit never addressed, the question of whether national job numbers alone satisfy the Commissioner's burden at step five to identify jobs that the claimant could perform. The statement upon which defendant appears to rely is this: "The vocational expert's testimony in response to the ALJ's hypothetical is substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which Weiler can perform." Id. at 1111.

While the Weiler court clearly approved of a step five analysis that was supported by only VE testimony based on the DOT and identifying national job numbers, the question of whether such testimony was sufficient was not squarely presented to the panel. Weiler was arguing that he was not actually capable of performing the jobs identified by the VE in his case. The Eighth Circuit was not called to answer the question of whether the ALJ must identify the regions of the country in which the identified jobs exist.

The remainder of defendant's argument misunderstands the issue. There is no question that jobs may exist anywhere in the United States, and there is no requirement that identified jobs must exist in the region in which a claimant lives. The question is

simply whether to carry its burden at step five the Commissioner must show that at least one of the identified jobs exists in significant numbers in either the region in which the claimant lives or, if not there, then in which region or regions of the country that job does exist in significant numbers.

The phrase "national economy" is intuitively confusing in this context. While the word "national" implies that national numbers are the ones with which the SSA should be concerned, the statute's definition of the phrase "work which exists in the national economy" explains that the requirement goes further than raw national numbers. The statute says: "work which exists in the national economy' means work which exists in significant numbers either in *the region where such individual lives* or *in several regions of the country*." 42 U.S.C. § 423(d)(2)(A) (emphasis added). Thus, "work which exists in the national economy' is a term of art in Social Security law. Flatequal v. Saul, No. 4:19-CV-04045-VLD, 2019 WL 4857584, at *26 (D.S.D. Oct. 2, 2019).

> The purpose of so defining the phrase ["work which exists in the national economy" to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country] is to preclude from the disability determination consideration of a type or types of jobs that exist only in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do.

Doc. 18 at 24 (quoting Conference Committee Rpt. 1030, 90th Cong. (Dec. 11, 1967), p. 52, https://www.ssa.gov/history/pdf/dibreport.pdf at p. 11 (last viewed Jan. 22, 2020)).

Defendant argues that "when a vocational expert identifies a significant number of jobs nationwide, he or she is identifying jobs existing in 'several regions of the country' as required by 42 U.S.C. § 423(d)(2)(A)." Doc. 18 at 25. If that is true, then there is little harm in asking the VE to elaborate just enough to ensure that the claimant knows in which regions of the country the identified jobs exist.

Indeed, this is a relatively common requirement that is imposed on VEs in other parts of the country. Defendant cites Gutierrez v. Commissioner of Social Security, 740 F.3d 519 (9th Cir. 2014), for the proposition that national numbers alone are sufficient.

But the ALJ in that case relied on both national and regional numbers for the step five analysis. See id. at 521 ("Thus, because Gutierrez could perform 2,500 jobs in California and 25,000 jobs in the nation, the ALJ concluded that Gutierrez did not suffer from a disability under the Social Security Act."). In Barrett v. Barnhart, the Seventh Circuit, responding to a government request to change a sentence in an opinion which implied that 'work which exists in the national economy' means jobs that exist "*in reasonable proximity to where [the claimant] lives*," 368 F.3d 691, 692 (7th Cir. 2004) (emphasis original), stated:

> Yet in our experience, and, it seems, in that of the other circuits as well, the vocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area. See, e.g., *Fastner v. Barnhart,* 324 F.3d 981, 985 (8th Cir.2003); *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir.2002); *Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir.2002); *Howard v. Commissioner of Social Security,* 276 F.3d 235, 238–39 (6th Cir.2002); *Dixon v. Massanari,* 270 F.3d 1171, 1179 (7th Cir.2001); *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000); *Shramek v. Apfel,* 226 F.3d 809, 815 (7th Cir.2000); *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir.2000); *Lee v. Sullivan,* 988 F.2d 789, 792 (7th Cir.1993); *Ehrhart v. Sec'y of Health & Human Services,* 969 F.2d 534, 540 (7th Cir.1992). We have found only a few cases in which national numbers alone were cited as a basis for denying benefits.

Barrett v. Barnhart, 368 F.3d 691, 692 (7th Cir. 2004). "The Commissioner's regulation likewise does not define 'region,' but only says that 'region' is not equal to "immediate area." Flatequal, 2019 WL 4857584, at *27 (citing 20 C.F.R. § 404.1566(a)(1)).

This Court will not go so far as the Seventh Circuit appears to but will confine its order to the language of the statute. It is the responsibility of the Commissioner at step five to identify jobs which the plaintiff can perform despite her disability and which exist in substantial number either in the region in which she lives or in several regions of the country. A citation to national numbers alone does not suffice to meet that burden; both national *and* regional numbers must be cited. That said, there is nothing in the statute suggesting that the identified jobs *must* exist in the region in which the claimant lives. It seems obvious that jobs local to the claimant would be preferable, if they exist. If they do

not, however, that is not a barrier to finding a claimant not disabled. The word "or" is used in the statute and the Commissioner may meet the burden by establishing that substantial numbers of jobs exist in several regions of the country.

In the instant case, the ALJ discussed nothing in the opinion beyond national numbers and did not even ask the VE about jobs existing in plaintiff's region or in several regions of the country. For that reason, the ALJ did not meet the Commissioner's burden at step five of the sequential analysis to identify jobs that plaintiff could perform despite her disability.

## ORDER

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's motion, Doc. 15, for reversal of the Commissioner's decision is GRANTED.

2. The final decision of the Commissioner is REVERSED.

3. The decision of the Commissioner is reversed and remanded for a limited rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this _____ day of July, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge